UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ANTHONY GAETANO,**<br><br>　　**Plaintiff,**<br><br>　　v.<br><br>**GILEAD SCIENCES, INC.,**<br><br>　　**Defendant.** | Civ. No. 21-01418 (KM) (JBC)<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

　　This is a products liability action by a New Jersey resident, Anthony Gaetano, against Gilead Sciences, Inc., the maker of Truvada, an HIV prevention and treatment drug. Gilead moves pursuant to 28 U.S.C. § 1404(a) to transfer this case to its home district, the United States District Court for the Northern District of California ("Northern California"), where a number of similar actions are pending. (DE 23.)[1] For the following reasons, the motion is **DENIED**.

**I.　BACKGROUND**

　　A fuller background of the claims and issues is stated in my previous opinion in this case, *Gaetano v. Gilead Sciences, Inc.*, --- F. Supp. 3d ----, Civ.

---

[1]　Certain citations to the record are abbreviated as follows:

　　DE = docket entry

　　Compl. = Complaint (DE 1-1)

　　Reply = Gilead's Reply Brief (DE 26)

　　Anderson Decl. = Declaration of Joshua A. Anderson (DE 23-2)

　　Gaetano Decl. = Declaration of Anthony Gaetano (DE 25)

　　Answer = Gilead's Answer to the Complaint (DE 17)

　　*Holley* DE _ = docket entry in *Holley v. Gilead Sciences, Inc.*, No. 18-cv-6972 (N.D. Cal.)

No. 21-01418, 2021 WL 1153193 (D.N.J. Mar. 26, 2021) ("*MTD*"). To simplify the allegations, Truvada uses the active ingredient tenofovir disoproxil fumarate ("TDF"), which Gilead allegedly knew caused bone and kidney problems yet did not disclose. (Compl. ¶¶ 27, 33–36, 40–41.) Gilead also had discovered a similar active ingredient, tenofovir alafenamide fumarate ("TAF"), that did not pose the same risks as TDF. (*Id.* ¶¶ 58–60.) Yet Gilead discontinued its development of a TAF medication to instead focus on TDF medications. (*Id.* ¶¶ 61–63.) Mr. Gaetano took Truvada for nearly a decade and has experienced bone and kidney problems, which he alleges are related to Truvada. (*Id.* ¶ 8, 12, 18–19.)

Mr. Gaetano sued Gilead in New Jersey Superior Court in July 2020, asserting claims under the New Jersey Product Liability Act ("NJPLA"), N.J. Stat. Ann. § 2A:58C-2, and for negligence. As to his NJPLA claim, he alleged two theories: (1) Truvada was defective because it caused kidney and bone damage, yet a safer alternative (TAF) was available; and (2) Truvada's label failed to warn of risks. (*Id.* ¶¶ 72–80.) Gilead moved to dismiss, and the parties fully briefed that motion. When additional parties were dismissed, creating complete diversity, Gilead removed the case to this Court in January 2021, and its motion to dismiss was heard here. (DE 1, 4.)

Gilead's motion argued that all of Gaetano's claims are preempted and that his failure-to-warn claim is precluded by New Jersey law. The preemption analysis required careful analysis attuned to the specific sub-theories asserted by Mr. Gaetano. *See MTD*, 2021 WL 1153193, at *2–11. My analysis relied particularly on an opinion by the Honorable Jon S. Tigar of the U.S. District Court for the Northern District of California, which largely denied an analogous motion to dismiss. *See Holley v. Gilead Sciences, Inc.*, 379 F. Supp. 3d 809 (N.D. Cal. 2019). I agreed with Judge Tigar that most of the theories were not preempted. *MTD*, 2021 WL 1153193, at *5 n.5, *11 n.12.[2] I thus denied Gilead's motion to dismiss in its entirety. Gilead then answered, asserting

---

[2]   Judge Tigar did dismiss one sub-theory, which I did not.

defenses that, among other things, implicate Mr. Gaetano's physicians. (*See, e.g.*, Answer ¶ 11 (comparative or contributory negligence), ¶ 30 (physicians did not rely on Gilead's representations).)

Even before I decided the motion to dismiss, the *Holley* litigation had grown to encompass many similar, consolidated actions by Truvada consumers against Gilead. (*See* Anderson Decl. ¶¶ 6–8.) As of the filing of the motion to transfer that is the subject of this Opinion, *Holley* encompassed thirty-three consolidated actions. (*Id.* ¶ 7.) In that mix are state-law claims by New Jersey plaintiffs. (*Id.*) Judge Tigar has coordinated the pre-trial phase for the consolidated cases. To that end, Judge Tigar adopted a schedule for bellwether trials. (*Holley* DE 709.) It appears that the parties are engaging in initial discovery for discovery pool cases. (*Id.*; Anderson Decl. ¶¶ 10–16.) Gilead has produced over 11.9 million pages of documents. (Anderson Decl. ¶ 11.) The plaintiffs have taken nineteen depositions of current or former Gilead employees and identified thirty-eight potential deponents. (*Id.* ¶¶ 12–15.) The first bellwether trial is set for January 2024. (*Holley* DE 709.)

Citing this progress, Gilead moved to transfer this case to Northern California for consolidation with the *Holley* cases. Gilead additionally notes that it is headquartered in Northern California, and nearly all its witnesses and third-party witnesses (*i.e.*, former Gilead employees or employees who may leave its employment in the near future) at least reside in the district. (Anderson Decl. ¶¶ 4–5.) Gaetano opposes transfer, citing, among other things, the facts that (1) he is an HIV-positive individual who suffers from diagnosed chronic pain that impacts his daily life and impedes travel; and (2) he is retired, and his income consists of $22,000 annually from social security and an extra $200 monthly from retirement savings. (Gaetano Decl. ¶¶ 2–5.)

## II. DISCUSSION

A district court may transfer a case to another district pursuant to 28 U.S.C. 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil

3

action to any other district or division where it might have been brought." There is no dispute that this action could have been brought in Northern California.[3] The decision to transfer, then, is left to the court's discretion, guided by certain factors identified by the Third Circuit. *In re: Howmedica Osteonics Corp*, 867 F.3d 390, 401–02 (3d Cir. 2017). These factors require the Court to weigh private and public interests. I discuss each, plus case-specific considerations, and consider whether Gilead has carried its burden to show that they weigh in favor of transfer. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879–80 (3d Cir. 1995).

## A. Private Interests

The Third Circuit instructs that I consider the following private interests:

- the plaintiff's forum preference;
- the defendant's forum preference;
- whether the claim arose elsewhere;
- the convenience of the parties as indicated by their relative physical and financial condition;
- the convenience of the witnesses, and the location of books and records;
- all other practical problems that make trial of a case easy, expeditious, and inexpensive.

*Howmedica*, 867 F.3d at 402.

Starting with preferences, each party wishes to litigate in its home district. On this factor, a tie usually goes to the plaintiff, whose choice of forum "should not be lightly disturbed." *Jumara*, 55 F.3d at 879 (citation omitted). It is true, as Gilead argues, that the plaintiff's choice receives less weight "when the dispute at the heart of a lawsuit occurred almost entirely in another state."

---

[3] Gilead's headquarters are within the Northern District of California. (Anderson Decl. ¶ 3.) The action thus could have been brought in that venue. *See* 28 U.S.C. § 1391(b)(1) (venue is proper in "a judicial district in which any defendant resides"), (c)(2) (entities are deemed to reside where they are subject to personal jurisdiction); *Chavez v. Dole Food Co.*, 836 F.3d 205, 223 (3d Cir. 2016) (en banc) (a corporation is subject to personal jurisdiction where it has its principal place of business).

*SPCK USA, Inc. v. Precision Couplings, LLC*, Civ. No. 21-1418, 2019 WL 102412, at *5 (D.N.J. Jan. 4, 2019). And one could say that the claim here arose with the development of Truvada, which occurred in California. *See Sykes v. Glaxo-SmithKline*, 484 F. Supp. 2d 289, 322 (E.D. Pa. 2007). Still, Gaetano suffered the injury that gave rise to the claim in New Jersey. Moreover, Gilead's defenses depend on facts pertaining to Mr. Gaetano's treatment by his physicians, which occurred in New Jersey. (*E.g.*, Answer ¶¶ 11, 30.) To discount Mr. Gaetano's choice of forum, Gilead might have attempted to show that "the events of the suit occurred almost *exclusively* in another forum." *Coyoy v. United States*, --- F. Supp. 3d ----, ----, Civ. No. 20-2501, 2021 WL 1050198, at *12 (D.N.J. Mar. 18, 2021). But where, as here, "many critical facts in this case occurred in New Jersey," the plaintiff's choice is entitled to deference. *MaxLite, Inc. v. ATG Elecs., Inc.*, 193 F. Supp. 3d 371, 393 (D.N.J. 2016) (emphasis added) (citation omitted). Even if that were not so, "the fact that the events of the suit occurred in another forum only means a plaintiff's choice is given less weight, not no weight." *Coyoy*, 2021 WL 1050198, at *12.[4]

---

[4] To discount the weight of Mr. Gaetano's choice of forum, Gilead points in its Reply to the fact that he originally filed in state court. (Reply at 2–3.) Gilead adds that Gaetano did not oppose removal or try to defeat diversity jurisdiction. (*Id.* at 3.)

I do not find these arguments persuasive. Although some courts have considered whether the case was removed from state court, there is no consensus that removal has any relevance in the § 1404(a) analysis. *Compare* Charles Alan Wright et al., *Federal Practice & Procedure* § 3854 n.18 (4th ed. Apr. 2021 update) (collecting cases considering removal), *with Oien v. Thompson*, 824 F. Supp. 2d 898, 905–06 (D. Minn. 2010) (rejecting removal as a consideration). Yet, whether a case can be brought in federal court versus state court is mostly a matter of whether it qualifies for federal jurisdiction. *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 376–77 (2012) (stating that federal courts are "courts of limited jurisdiction" and explaining their bases for jurisdiction). Section 1404(a), by contrast, is focused on convenience and geography. *See Jumara*, 55 F.3d at 879. What is important, then, for § 1404(a) is the geographic *location* in which the case was brought. *Oien*, 824 F. Supp. 2d at 906. I do not understand why Gaetano's filing in state court—a forum from which transfer to California federal court is not possible—should detract from the weight of his choice of forum. Nor do I see why removal—Gilead's idea, not Gaetano's—is relevant to his

As to convenience of the parties, this factor also favors Mr. Gaetano. Gilead is a large corporation with locations throughout the U.S., including one in New Jersey. *U.S. Locations*, Gilead, https://www.gilead.com/about/us-locations (last visited July 27, 2021). Gilead is also represented by a large, national law firm and has retained local counsel that regularly appears in this Court. It is thus hard for Gilead to argue that it is difficult to litigate here. *See Fernandes v. Deutsche Bank Nat'l Tr. Co.*, 157 F. Supp. 3d 383, 391 (D.N.J. 2015) (requiring companies that do business in New Jersey to defend here "works no serious inconvenience"). Still further, Gilead has already participated in litigation in this Court and New Jersey Superior Court, waiting until a later hour to ask for a transfer. It is too cynical to suggest that this forum became inconvenient only after Gilead lost its motion to dismiss (its motion in *Holley* was decided similarly). But Gilead has demonstrated that it can litigate effectively here.

On the other side of the "*v.*" is the plaintiff, a New Jersey retiree represented by a four-person New Jersey law firm. In contrast to the minimal burden on Gilead were it to litigate here, litigating in California would pose a severe hardship for Mr. Gaetano. He attests to chronic medical ailments and serious financial constraints. (Gaetano Decl. ¶¶ 2–5.) Yet, if a transfer were granted, he would need to secure California counsel and provide for travel for himself, his witnesses, and his counsel—a routine task for a large corporation, but a difficult and expensive feat for an individual in Mr. Gaetano's circumstances. Further, California is foreign to Mr. Gaetano, but New Jersey is not foreign to Gilead, which does business here. *See Kedia v. Jamal*, Civ No. 06-6054, 2007 WL 1239202, at *4 (D.N.J. Apr. 25, 2007) (considering that the plaintiff had no discernible contacts with the other forum). Accordingly, balancing the convenience and conditions of the parties weighs against transfer.

---

choice of forum. If the implication is that Gaetano needed to fight removal, despite the presence of diversity jurisdiction, to demonstrate his *bona fides*, I disagree.

6

As to the convenience of witnesses, the factors are more mixed but still weigh against transfer. The parties identify potential witnesses as current and former Gilead employees, Mr. Gaetano himself, and Gaetano's medical providers. I do not give undue weight to the location of current Gilead employees or Mr. Gaetano because, as party witnesses, they are expected to appear. *Intellectual Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 757 (D. Del. 2012); *In re Consol. Parlodel Litig.*, 22 F. Supp. 2d 320, 325 (D.N.J. 1998). Access to non-party witnesses is important, *id.*, "but only to the extent that the witnesses may actually be unavailable for trial in one of the fora," *Jumara*, 55 F.3d at 879.

Gilead argues that its former employees are beyond the subpoena power of this Court, while Mr. Gaetano's medical providers should be expected to appear wherever the case is heard, because they are necessary to his case-in-chief. (DE 4-3 at 13–14, 17–18.) But several of Gilead's former employees reside outside the subpoena power of the *Holley* court. (*See* Anderson Decl. ¶ 13 (stating that some former employees who have been deposed reside in Southern California, Washington, Nevada, North Carolina, Hawaii).) And they are presumably no less subject to suasion than Mr. Gaetano's doctors. Gilead has not shown that any witnesses will be unwilling to testify, as is necessary to carry its burden. *MaxLite*, 193 F. Supp. 3d at 394. Indeed, some former Gilead employees have already sat for depositions, so there is no reason to think they will be uncooperative. What is more, the fact that depositions have occurred militates against transfer, because the parties here can use transcripts or recordings of those depositions. *See Coyoy*, 2021 WL 1050198, at *12. Accordingly, Gilead has not made any substantial showing that any witnesses will be unavailable here but available in the Northern District of California.

Nor does the location of documents—a minimal consideration in an age of electronic storage and communications—help Gilead. Gilead makes no indication that this case could not proceed using now standard tools of e-discovery. Indeed, Gilead has already produced millions of documents, so

presumably they are ready to be produced again to the extent necessary. The location of books and records does not weigh in favor of disturbing Mr. Gaetano's choice of forum.

Thus far, the private-interest factors have favored Mr. Gaetano. What makes the balancing more complicated is the catchall factor: how litigation in the same district as *Holley* would make this case easier, more expeditious, and less expensive. *Howmedica*, 867 F.3d at 402. On the one hand, the pendency of a similar case in the proposed transferee venue "is a powerful reason to grant a motion for a change of venue." *Canon Fin. Servs., Inc. v. JL Barrett Corp.*, Civ. No. 10-4117, 2010 WL 4746242, at *3 (D.N.J. Nov. 16, 2010). That principle has some force here because the pending, similar case (*Holley*) already has a case management structure in place and is proceeding. In such circumstances, "pretrial discovery may be conducted more efficiently, witnesses' time may be conserved, [and] public and parties' litigation expenses may be reduced." *Clark v. Burger King Corp.*, 255 F. Supp. 2d 334, 339 (D.N.J. 2003) (citation omitted). Given the nature of the claims here and the discovery already produced for related cases, it seems that we may anticipate substantial discovery and contested issues of fact. Mr. Gaetano could thus benefit if his case were consolidated with the *Holley* cases, because the facts are being gathered by discovery pool plaintiffs. In addition, a bellwether trial or trials might smooth the path to settlement, one way or the other.

On the other hand, *Holley* could complicate Mr. Gaetano's efforts at reaching a judgment in *his* case. If his case is transferred and consolidated, it will take a backseat to lead cases. Whatever their benefits, the bellwether trials will not dispose of *Mr. Gaetano's* claims. If the value of the bellwether trials is simply to show the parties which way the wind is blowing, that effect does not require a transfer of venue. Moreover, those bellwether cases are not set for trial until January 2024. (*Holley* DE 709.) Meanwhile, the discovery pool plaintiffs may spend time taking discovery not relevant to Mr. Gaetano. In this district, as things stand now, discovery is scheduled to close in July 2022, with

8

summary judgment motions to follow shortly thereafter. (DE 22.) At bottom, the *Holley* litigation, while being ably managed to bring about an overall resolution of a large number of cases, is sprawling in comparison to this single-plaintiff, few-claims case. Thus, it is not clear that transferring and consolidating with *Holley* would lead to a faster, less expensive resolution of Mr. Gaetano's claims.

Putting these factors all together, they weigh in favor of Mr. Gaetano. To be sure, the *Holley* litigation provides one reason for transfer. But because it does not appear that consolidation will speed along Mr. Gaetano's claims, *Holley* does not outweigh the other factors.

## B. Public Interests

The Third Circuit instructs that I consider the following public interests:

- the enforceability of the judgment;
- the relative administrative difficulty in the two fora resulting from court congestion;
- the local interest in deciding local controversies at home;
- the public policies of the fora;
- the familiarity of the trial judge with the applicable state law in diversity cases; and
- judicial economy considerations.

*Howmedica*, 867 F.3d at 402.

Many of these factors do not favor transfer or are neutral. There would be no problem with the enforceability of the judgment were it issued from either court. *Id.* at 410. We in this District are familiar with governing New Jersey law, but federal judges, wherever they sit, can ably apply other states' products liability law and regularly do so. *Yocham v. Novartis Pharm. Corp.*, 565 F. Supp. 2d 554, 560 (D.N.J. 2008). It is true that New Jersey has a local interest in deciding a case which involves New Jersey law and an injury to a New Jersey plaintiff. *Smith v. G2 Secure Staff, LLC*, Civ. No. 19-16829, 2020 WL 2520420, at *5 (D.N.J. May 18, 2020). But California, too, has an interest in regulating

the conduct of corporations headquartered there. *Bella & Rosie Rock, LLC v. We Rock the Spectrum, LLC*, Civ. No. 17-3628, 2018 WL 844398, at *7 (D.N.J. Feb. 13, 2018). Regarding relative administrative difficulty, despite this Court's congestion and longer average time to trial,[5] there is a good possibility that a trial on Mr. Gaetano's claims could be heard before even the first bellwether trial in Northern California. (Section III.A, *supra*.) Moreover, I have no doubt that Judge Tigar and the court on which he sits have quite enough to do, in connection with *Holley* and the rest of their busy docket.

These general factors thus do not help to carry Gilead's burden. I move on to consider two public-interest and judicial-economy considerations particular to this case: (1) delay in seeking transfer, and (2) the first-filed rule.

### 1. Delay

Gilead's request to transfer venue comes some five months after it removed the case to this Court and after the Court has invested its time in handing down a significant ruling on a motion to dismiss. Now there is no time limit on when a party must move to transfer venue on pain of waiver. *See Ethicon, Inc. v. Randall*, Civ. No. 20-13524, 2021 WL 2206106, at *8 (D.N.J. May 28, 2021). But courts still will take into account a party's delay in moving for transfer. *E.g., Church & Dwight v. Mayer Labs., Inc.*, Civ. No. 08-5743, 2010 WL 3907038, at *6 (D.N.J. Sept. 28, 2010); *Dibsie v. Gulf Stream Coach, Inc.*,

---

[5]  Admin. Office of the U.S. Courts, Table C-1–U.S. District Courts–Civil Federal Judicial Caseload Statistics, https://www.uscourts.gov/statistics/table/c-1/federal-judicial-caseload-statistics/2020/03/31 (Mar. 31, 2020); Admin. Office of the U.S. Courts, Table N/A–U.S. District Courts–Combined Civil and Criminal Federal Court Management Statistics at 15, 66, https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0331.2021.pdf (Mar. 31, 2021). This District and the Northern District of California have similar rates of time to disposition (as opposed to trial). Considering that most federal cases resolve without trial, *Intellectual Ventures*, 842 F. Supp. 2d at 757–58 (citations omitted), the difference in congestion between this District and Northern California is perhaps less significant. The congestion in this Court, moreover, has been driven by a high number of longstanding judicial vacancies (six out of seventeen judgeships). That situation is easing, with two new appointments and two more likely in the near future.

10

Civ. No. 07-5798, 2008 WL 2230658, at *8 n.6 (D.N.J. May 28, 2008); 15 Charles Alan Wright et al., *Federal Practice & Procedure* § 3854 nn.24 & 25 (4th ed. Apr. 2021 update) (hereinafter "Wright & Miller"). Delay is relevant to considerations of judicial economy because transfer after significant rulings means that the transferor court will lose a case in which it has already invested. *See* 1 James Moore et al., *Moore's Manual: Federal Practice and Procedure* § 7.81[3][h] (2021) (in deciding a motion to transfer, "[t]he court may also consider whether one court has already expended substantial time and effort to become familiar with the subject matter and facts of the case"); *McDonnell Douglas Corp. v. Polin*, 429 F.2d 30, 30 (3d Cir. 1970) (per curiam) ("Judicial economy requires that another district court should not burden itself with the merits of the action until it is decided that a transfer should be effected . . . ."). Indeed, "motions to transfer filed after significant rulings have been made are more likely to be animated by forum shopping and to result in procedural jockeying that delays the resolution of claims, increases the costs of litigation, and burdens judicial dockets." *Hirst v. SkyWest, Inc.*, 405 F. Supp. 3d 771, 779 (N.D. Ill. 2019).[6]

      Here, Gilead has not explained why it chose to first move to dismiss and only then move to transfer. Absent any explanation, I can infer that Gilead hoped to get a more favorable ruling from me than it received from Judge Tigar, but having failed to do so, would prefer to just consolidate this case with *Holley*. Many a litigant has tried its luck in one court, received an unfavorable ruling, and then sought to litigate elsewhere. This strategy does not run afoul of the literal letter of Rule 12 or § 1404(a), but there is a public interest in

---

[6]    To some degree, I also consider the plaintiff's vested expectation in continuing to litigate in a New Jersey forum. The defendant has already once disturbed Mr. Gaetano's choice of forum by removing the case to this Court. Gilead then filed a dispositive motion in this District and answered the Complaint. *See Marino v. Kent Line Int'l*, No. CIV.A.02-4488, 2002 WL 31618496, at *4 (E.D. Pa. Nov. 20, 2002) (considering that "a scheduling order has issued and it is reasonable to conclude that expectations of litigation in this forum have developed"). The forum cannot remain a moving target forever.

11

discouraging it. *See Cohen v. Waxman*, 421 F. App'x 801, 803 (10th Cir. 2010) (affirming denial of a motion to transfer filed after a motion to dismiss because the movant desired to seek a forum where he would not lose); *Utterback v. Trustmark Nat'l Bank*, 716 F. App'x 241, 245 (5th Cir. 2017) (per curiam) (similar).

Deciding motions to dismiss, especially involving these complex issues, consumes the court's resources and requires the judge to become familiar with the specifics of the case. The problematic strategy of moving to dismiss, and then moving to transfer, is particularly severe with Gilead because—as it openly admits—it is currently asking several federal courts of origin to decide similar motions to dismiss, no doubt hoping to book a favorable ruling somewhere. (Anderson Decl. ¶¶ 17–22.) Presumably, if it loses those motions, Gilead will do as it did here: ask to transfer those cases to Northern California. The result will be that courts across the country will expend resources on Gilead's arguments, an expenditure of resources that could potentially have been avoided if Gilead had asserted a meritorious motion to transfer in timely fashion.

There is also the law of the case doctrine to consider. To the extent pre-transfer rulings differ from those Judge Tigar has made or will make, he would have to somehow reconcile them going forward. *See In re Pharm. Benefit Managers Antitrust Litig.*, 582 F.3d 432, 439–40 (3d Cir. 2009) (discussing law of the case doctrine as applied to transferred cases). Even assuming *arguendo* that transfer would be appropriate, Gilead's delay in seeking transfer may operate at the expense of consistency. I do not, however, give this factor undue weight under the particular circumstances of this case.[7]

It is true that many cited authorities denying transfer involved cases that were further along. *See* Wright & Miller § 3844 n.25 (collecting cases). Still,

---

[7] My ruling diverged from that of Judge Tigar, but not fundamentally. The point of difference involved two affirmative defenses and whether they should be dismissed at the pleading stage.

other courts have denied motions in cases at a stage of development similar to this one. *See, e.g.*, *Marino v. Kent Line Int'l*, No. CIV.A.02-4488, 2002 WL 31618496, at *4 (E.D. Pa. Nov. 20, 2002) (four months into case); *Ralph v. Exxon Mobil Corp.*, Civ. No. 05-655, 2006 WL 2266258, at *4 (S.D. Tex. Aug. 8, 2006) (six months into case).

Ultimately, Gilead's delay and expenditure of this Court's resources are not dispositive, but they deserve some weight in the § 1404(a) analysis. The interests of justice require me to cast a gimlet eye on a motion to transfer filed after an unsuccessful motion to dismiss.

### 2. First-Filed Rule

Because there is a similar, pending case in another district, the first-filed rule is appropriately considered. *Ethicon*, 2021 WL 2206106, at *9–10. "That rule is a comity-based doctrine stating that, when duplicative lawsuits are filed successively in two different federal courts, the court where the action was filed first has priority." *Chavez v. Dole Food Co., Inc.*, 836 F.3d 205, 210 (3d Cir. 2016) (en banc). That is, the second-filed court has the discretion to, among other things, transfer the case. *Id.* "[T]he rule's primary purpose is to avoid burdening the federal judiciary and to prevent the judicial embarrassment of conflicting judgments." *EEOC v. Univ. of Penn.*, 850 F.2d 969, 977 (3d Cir. 1988).

This is not a classic first-filed situation. That rule generally applies when the two cases are truly duplicative, *i.e.*, when they involve the same issues and same parties. *Coyoy*, 2021 WL 1050198, at *10. Mr. Gaetano is not a party to any of the *Holley* actions and is not in a privity or other relationship with those plaintiffs.[8] Nor are the issues identical; the *Holley* litigation involves claims

---

[8] The analysis could differ if the cases were class actions. *See MacLean v. Wipro Ltd.*, Civ. No. 20-3414, 2020 WL 7090746, at *6 (D.N.J. Dec. 4, 2020) (courts compare proposed classes when deciding whether two suits have the same parties for purposes of the first-file rule). But this case does not seek to proceed as a class action (*see* Compl.), and the same is true of the *Holley* litigation, *see Holley*, 379 F. Supp. 3d at 816 (explaining that the case was a "mass action" involving many plaintiffs, but not a class action); *Abraham v. St. Croix Renaissance Grp., LLLC*, 719 F.3d 270, 272 n.1 (3d

13

from dozens of states, relying on different theories from those pressed here. This case is thus not a true second-filed action in the classic sense.

More loosely, however, I can consider the judicial-economy implications of a parallel (albeit not identical) "first-filed" case. And I recognize that some courts apply the rule so long as there is "substantial overlap" between the two actions, which could be said here. *Coyoy*, 2021 WL 1050198, at *9. Thus, I will consider whether the general interests underlying the first-filed rule would be served by transferring this case.

They would not. For starters, the decision to transfer in response to the rule is, at bottom, discretionary. *Chavez*, 836 F.3d at 210. Courts in this District have declined to transfer to a first-filed forum when the other § 1404(a) factors cut the other way. *Ethicon*, 2021 WL 2206106, at *9–10. Those factors weigh against transfer here.

Next, the risk of duplication is not so great here. While there are New Jersey claims in the *Holley* litigation, there is no indication that they are part of the bellwether trial schedule or will be resolved anytime soon. What is more, a bellwether's purpose is to encourage settlements for the remaining plaintiffs. *Morgan v. Ford Motor Co.*, Civ. No. 06-1080, 2007 WL 1456154, at *6 (D.N.J. May 17, 2007). If things go as intended, the New Jersey claims may never see a judicial resolution that could conflict with any decision here. Along those same lines, nearly a fifth of the plaintiffs in the *Holley* litigation so far have been dismissed by motion, stipulation, or notice. (Anderson Decl. ¶ 7.) At that rate, it would be unsurprising if some or all New Jersey claims drop out before judgment. So while it is possible that *Holley* will resolve claims under New Jersey law, it is far from certain that those claims are on a fast track to produce any judgment, let alone a conflicting one.

Nor is there a strong risk of imposing wasteful or duplicative burdens on Gilead. A good portion of the issues here require development specific to Mr.

---

Cir. 2013) (distinguishing a mass action from a class action because, in the former, individual plaintiffs do not seek to represent an absent class).

Gaetano. Although *Holley* is currently developing facts common to all claims, the parties may be able to piggy-back on the discovery already produced and depositions already taken. They need not necessarily repeat the whole process. The parties here are encouraged, under the guidance of the assigned Magistrate Judge, to shape discovery with a view to efficiency in light of the *Holley* litigation.

Finally, the first-filed rule gives way when its application would cause prejudice. *Chavez*, 836 F.3d at 219. There is a potential for prejudice here because Mr. Gaetano would be downgraded from the shepherd of his relatively narrow claims to a sheep in a large flock herded by others. *See Ralph*, 2006 WL 2266258, at *4 (declining to transfer when the plaintiff "would be forced to move to the end of the line in any transferee court"). Consolidation with *Holley* is likely to postpone any relief or resolution of his specific claims. Thus, even if the first-filed rule were implicated here, I would exercise my discretion not to apply it.

\* \* \*

In sum, the public-interest factors favor Mr. Gaetano, and because the private-interest factors point in the same direction, I decline to transfer this case.

### III. CONCLUSION

For the reasons set forth above, the motion to transfer is denied.

A separate order will issue.

Dated: July 27, 2021

/s/ Kevin McNulty

---

**Hon. Kevin McNulty**
**United States District Judge**

15